UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ELDER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4: 17 CV 873 DDN |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Michael Elder, Jr., for supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is reversed and remanded for further consideration.

## I. BACKGROUND

Plaintiff was born in 1968 and was 47 years old at the time of his hearing. He filed his application on October 31, 2013, alleging a September 21, 2000 onset date. (Tr. 153-58). In his Disability Report, he alleged disability due to nerve damage with pain in the left arm, left and right knee pain, left hip pain, emotional problems, and major depression. (Tr. at 210). His application was denied, and he requested a hearing before an ALJ. (Tr. 1-6, 14-16, 98-102).

On January 7, 2016, following a hearing, an ALJ found that plaintiff was not disabled as defined in the Act. (Tr. 17-38). The Appeals Council denied his request for

review.  (Tr. 1-3).  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  ADMINISTRATIVE RECORD

Plaintiff has an extensive medical history.  The court summarizes plaintiff's medical records to the extent relevant to this appeal.

On May 21, 2013, plaintiff was treated in the emergency room after being hit in the leg with an ax handle and was diagnosed with a contusion.  His left knee was placed in an immobilizer and he was prescribed hydrocodone-acetaminophen.  (Tr. at 236, 240).

On September 17, 2013, plaintiff was seen in the emergency room with thoughts of killing his mother and step-father.  He reported increased thoughts of suicide over the previous several weeks.  Plaintiff reported symptoms of depression, increased irritability, difficulty with concentration and focus, and difficulty sleeping.  His urine drug screen was positive for marijuana and his blood alcohol level was 0.2.  Plaintiff improved with lithium.  He was discharged with a diagnosis of major depressive disorder, and prescribed Celexa, an anti-depressant; trazodone, for insomnia; and lithium, for mood stability.  (Tr. at 261-63

Plaintiff was hospitalized at Phelps County Regional Medical Center December 8-16, 2013 after overdosing on lithium and vodka.  He reported planning to cut his wrists.  He was diagnosed with depression, alcohol use disorder, marijuana use disorder, personality disorder, not otherwise specified, and substance abuse.  His GAF score was "About 60."  Plaintiff participated in group therapy and was much improved and stable upon discharge.  Because he did not have an income or housing, he was discharged to a shelter to follow up at Pathways Behavioral Health (Pathways).  (Tr. at 275-79).

On February 6, 2014, plaintiff underwent a psychological examination by Thomas J. Spencer, Psy. D., to determine Medicaid eligibility.  He reported a history of nerve damage in his left arm, as well as depression with symptoms of lack of energy, isolating himself, difficulty sleeping, racing thoughts, and inability to focus.  He also reported abusing alcohol.  On exam, Dr. Spencer noted plaintiff had flat speech and restricted

affect. He diagnosed alcohol dependence in early remission, bipolar disorder, and polysubstance dependence in sustained remission. Dr. Spencer assessed a GAF score of 50 to 55 and opined that plaintiff's mental illness interfered with his ability to engage in employment. (Tr. at 314-18).

On May 7, 2014, plaintiff underwent another Medicaid evaluation. He reported experiencing low back pain, left knee pain, and left arm pain. Plaintiff reported that he had been involved in a work accident in 2000, sustaining a cut to his arm and nerve damage. He had also been attacked with an ax handle in 2013. Upon exam, he had decreased range of motion of the left shoulder, elbow, hand and wrist, as well as of the knees and lumbar back. He was diagnosed with chronic back pain, left knee pain, and permanent nerve damage to the left upper arm secondary to laceration. The examiner found plaintiff had a loss of normal function of the left hand as well as decreased strength of the left arm. (Tr. at 330-33).

On July 8, 2014, plaintiff began treatment at Pathways Behavioral Health. On July 11, 2014, he saw Bhaskar Gowda, M.D., a psychiatrist. Plaintiff reported his history of depression and substance abuse. He said that he felt he had been doing well until he injured his hand and became unable to work when he started feeling depressed, hopeless, and helpless. Plaintiff reported experiencing symptoms of constant worry, edginess, and difficulty sleeping. Dr. Gowda diagnosed major depressive disorder and assessed a GAF score of 50. He started plaintiff on Seroquel, an antipsychotic medication. (Tr. at 764-72).

On August 1, 2014, plaintiff reported that he was no longer drinking alcohol, although he continued to feel depressed and hopeless. He also reported experiencing restlessness while on Seroquel, and Dr. Gowda therefore decreased his dosage. (Tr. at 754-55). Plaintiff continued to report symptoms of anxiety, difficulty concentrating, anger, depression, difficulty sleeping and fatigue. (Tr. at 731, 734, 738, 741, 745, 747). He continued to report sobriety. (Tr. at 741).

On November 21, 2014, plaintiff told Dr. Gowda that he continued to smoke marijuana frequently and that his anxiety persisted. (Tr. at 698). On December 19, 2014, he reported experiencing anger issues. (Tr. at 677). On January 16, 2015, Dr. Gowda started him on Neurontin, an anti-epileptic medication, and increased his Seroquel. (Tr. at 662). Plaintiff continued to report symptoms of depression and anxiety. (Tr. at 630, 634, 637, 643, 650, 652, 655, 658).

On January 12, 2015, plaintiff began treatment with Sandy Marshall, a Nurse Practitioner. She assessed plaintiff with bipolar disorder, seizures, nicotine addiction, alcohol abuse, hypothyroidism, hypertension, depression, swelling of both lower extremities, and Hepatitis C. She started him on Diovan, for hypertension. (Tr. at 441).

On March 13, 2015, plaintiff reported continued anxiety, difficulty sleeping, and worsening anger problems. Dr. Gowda increased his Neurontin. Plaintiff continued to report anxiety. (Tr. at 619-25). In April, plaintiff reported that he did not think his medications were helpful and Dr. Gowda adjusted his medications again. (Tr. at 599-06). Plaintiff continued to experience depression. (Tr. at 582, 594-95).

On May 5, 2015, he was seen for a possible hernia although surgical intervention was not recommended. (Tr. at 346, 433-34). On May 21, 2015, he began receiving treatment for Hepatitis C. (Tr. at 348-49).

On June 3, 2015, plaintiff reported experiencing bilateral shoulder pain and numbness, and tingling in his wrists and hands. Nurse Practitioner Marshall started him on Baclofen, for arthritis. (Tr. at 421-22). He reported that he did not think the medication was effective and Marshall started him on Meloxicam. (Tr. at 418, 471).

On June 4, 2015, plaintiff began treatment with Sreekant Kodela, M.D., a psychiatrist at Pathways. Dr. Kodela increased his Celexa and Seroquel. Later that month, plaintiff reported to his case manager that his depression was "a little better" with the medication change, although he continued to isolate himself. (Tr. at 570-74). He also reported that he was feeling fatigued and having difficulty concentrating. (Tr. at 568). On June 23, 2015, he reported continuing to isolate and having suicidal thoughts. (Tr. at 566).

On July 2, 2015, Dr. Kodela increased his lithium after plaintiff reported some improvement with his depression. He still had anxiety symptoms, some panic attacks, and ongoing PTSD. (Tr. at 560-61).

On July 6, 2015, Nurse Marshall completed a Medical Source Statement-Physical. She opined that plaintiff could occasionally lift/carry up to 50 pounds; occasionally crawl and climb; frequently reach, handle, finger and feel; sit two hours at a time and six hours total; and stand one hour at a time and less than two hours total. She further opined that plaintiff would need to shift positions at will from sitting, standing or walking; be off task ten percent of the time; be capable of moderate stress work; and be likely to miss work or leave early one day per month. (Tr. at 320-23).

On July 16, 2015, plaintiff reported to Marshall that he did not think his Meloxicam was effective in treating his arthritis. He reported painful ankle swelling to the extent that he could barely walk, as well as increased knee pain. (Tr. at 412). Imaging of his knee showed joint effusion and atherosclerotic calcifications. (Tr. at 363).

On August 5, 2015, Dr. Kodela completed a Medical Source Statement-Mental. He diagnosed plaintiff with bipolar disorder and polysubstance dependence in remission. He opined that plaintiff had moderate limitations in eleven areas of mental functioning, including his ability to interact appropriately with the general public, and mild limitations in all other areas. He believed that plaintiff would likely miss two days of work per month and be "off task" 10 percent of the time. (Tr. at 341-342).

**ALJ Hearing**

On December 8, 2015, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. at 39-79). He is unable to work because of nerve pain, weakness, and lack of sensation in his left hand and arm. (Tr. at 47, 49, 60). He has pain with certain kinds of movements, such as twisting, due to a hernia. He has pain in his knees. He can walk two or three blocks and stand for up to 30 minutes before having pain. (Tr. at 52-54).

As to his mental impairments, his medications were helping, but he still experiences depression, as well as manic episodes that occur once every week or two and last a few days. He is unable to sleep during these episodes. However, when he is depressed he sleeps too much. He has difficulty being around other people because of his anxiety. He also has racing thoughts and difficulty concentrating. He has not used drugs or alcohol in two years. (Tr. at 59-65).

A vocational expert also testified at the hearing. The ALJ posed a question concerning a hypothetical individual who was limited to light work and who could never climb ladders, ropes or scaffolds. The individual was limited to occasional pushing and pulling with the left non-dominant arm. Fine manipulation or fingering with the left non-dominant was occasional. The individual was limited to simple and routine work with only occasional decision-making or occasional changes in the work setting.

The vocational expert testified that an individual with these limitations could perform work as an information clerk, telephone solicitor, or surveillance system monitor. (Tr. at 69-71). These jobs would remain if the individual were further limited to occasional gross manipulation of handling with the left non-dominant hand. However, if the individual were further limited to no interaction with the public and occasional interaction with coworkers, the number of available jobs would be reduced. The vocational expert testified that no jobs would be available if the individual were to miss three or more days of work on a consistent basis due to mental health issues. (Tr. at 71-74).

### III.   DECISION OF THE ALJ

On December 22, 2014, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. at 10-22). At Step Two, the ALJ found that plaintiff had severe impairments, *i.e.*: nerve damage to the left arm, major depressive disorder, bipolar disorder, poly-substance dependence, and a ventral hernia. (Tr. at 22). At Step Three, the ALJ found plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed at 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

At Step Four, the ALJ found plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that he must avoid climbing ladders, ropes, and scaffolds; he could only occasionally push/pull with the non-dominant left arm, and use his non-dominant left hand only occasionally for fingering (fine manipulation) and handling (gross manipulation); he is further limited to work involving no more than occasional decision-making or changes in the work setting; and the work should also not require interaction with the public and no more than occasional interaction with coworkers. (Tr. 24).

The ALJ found that plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including unskilled work as a surveillance system monitor and product sorter. Consequently, the ALJ found that plaintiff was not disabled under the Act. (Tr. 33).

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to

last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.  20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his condition meets or equals a listed impairment.  20 C.F.R. § 416.920(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW).  Id. § 416.920(a)(4)(iv).  The claimant bears the burden of demonstrating he is no longer able to return to his PRW.  Pate-Fires, 564 F.3d at 942.  If the Commissioner determines the claimant cannot return to his PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V.   DISCUSSION

Plaintiff argues the ALJ erred in weighing the opinion of treating psychiatrist Dr. Kodela and determining his RFC.  This court agrees.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record.  Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000).  RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations.  Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a).  While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some

evidence from a medical professional.  Lauer, 245 F.3d at 704.  An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, at *7 (1996).  The Commissioner uses medical sources to "provide evidence" about several factors, including RFC, but the "final responsibility for deciding these issues is reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ determined that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he must avoid climbing ladders, ropes, and scaffolds.  He could only occasionally push/pull with the non-dominant left arm, and can use his non-dominant left hand only occasionally for fingering (fine manipulation) and handling (gross manipulation).  He was further limited to work involving no more than occasional decision-making or changes in the work setting.  The work should not require interaction with the public and no more than occasional interaction with coworkers.  (Tr. 24).

The ALJ considered the opinion of treating psychiatrist Dr. Kodela and gave it "partial" weight.  The ALJ gave little weight to Dr. Kodela's opinion that plaintiff would be likely to miss work two days per month due to his impairments and that he would be off task 10 percent of the time.  He did not state his reasons why.  (Tr. 31-32).  Although Dr. Kodela indicated that plaintiff was only mildly limited in his ability to work in proximity to others without being distracted by them and in his ability to make simple work-related decisions, the ALJ credited the claimant's testimony in finding additional limitations in these areas.  The ALJ noted that the treatment notes from Pathways Behavioral Health indicate that plaintiff has the ability to make and maintain friendships but that he does experience anxiety in crowds.  The ALJ found no evidence that plaintiff had problems interacting with supervisors, although he found that plaintiff had difficulty interacting with coworkers based on his testimony.  (Tr. at 32).

Plaintiff argues the ALJ erred in failing to explain how he weighed Dr. Kodela's opinion. Plaintiff argues the ALJ erred because after giving Dr. Kodela's opinion partial weight, and accepting some limitations and discounting others, there remained a number of significant limitations that the ALJ failed to address or include in his RFC or hypothetical question posed to the vocational expert. The Commissioner argues, on the other hand, that he was not required to adopt Dr. Kodela's opinion in its entirety and was to base the RFC determination on the entire record and include only those limitations he found supported. The issue is not whether the ALJ was required to adopt all of Dr. Kodela's opinions, but was whether he was required to explain why did not adopt his other relevant opinions.

When discounting the opinion of a treating physician, the ALJ is required to give "good reasons" for doing so. Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002). When the RFC conflicts with the opinion of a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, *7 (Soc. Sec. Admin. July 2, 1996). And while the ALJ is not required to give great weight to an opinion, Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998), when the ALJ decides to do so, failure to then adopt the limitations in that opinion or at least discredit the opinion constitutes error. See Reynolds v. Astrue, 2007 WL 5100461, *4 (E.D. Mo. Aug. 7, 2007) (remand required when ALJ found opinion "well rationalized" but did not explain why he did not include all of the limitations in the RFC assessment). The Eighth Circuit similarly holds that while the ALJ is free to discount a medical opinion when warranted, the ALJ is required to explain his reasons for discarding the opinion. Simply affording an opinion partial weight does not relieve the ALJ of his obligation for giving reasons for disregarding important parts of the doctor's opinion. Murphy v. Colvin, 2016 WL 4158868, at *7 (E.D. Mo. Aug. 5, 2016).

The ALJ did not give good reasons here. The ALJ acknowledged that Dr. Kodela was a specialist with a history of treating plaintiff. However, the ALJ did not explain in his decision the reasons for disregarding parts of Dr. Kodela's opinion. The ALJ afforded

partial weight to Dr. Kodela's opinion, but did not discount or include in the RFC Dr. Kodela's opinion that plaintiff would be moderately limited in the ability to maintain attention and concentration for extended periods, perform activities within a schedule and be punctual within customary tolerances, or perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 342). After giving the opinion partial weight, the ALJ should have either included the limitations he did not discount in his RFC finding or provided a reason for not doing so.

The limitations the ALJ omitted from both the discussion and the RFC may be significant to the Vocational Expert. Dr. Kodela opined that plaintiff would have a moderate limitation in his ability to maintain attention and concentration for extended periods. (Tr. at 342). The RFC however, does not contain any limitation in the ability to maintain attention and concentration. (Tr. at 24). And although the hypothetical posed to the vocational expert contained a limitation to simple and routine work, it is not clear whether this limitation accounts for a limitation in maintaining attention and concentration for extended periods. (Tr. at 69). See e.g. Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (a limitation to simple work did not adequately account for deficiencies in concentration, persistence, or pace, including a moderate limitation in the ability to maintain attention and concentration for extended periods).

This court therefore concludes the ALJ's RFC determination is not supported by substantial evidence in the record as a whole. The ALJ's failure to explain his decision to disregard the treating physician's opinion was error. The matter is remanded for clarification. If the ALJ discounted Dr. Kodela's opinion as a treating psychiatrist, he must explain his reasons for doing so.

## VI. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner of Social Security is reversed and the case is remanded for further consideration and clarification regarding Dr. Kodela's opinions. An appropriate Judgment Order is filed herewith.

/s/ David D. Noce<br>
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 2, 2018.